UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
                              :
GEORGE BYRNE,                 :    09 Civ. 6552 (WHP)
                              :
            Plaintiff,        :    MEMORANDUM & ORDER
                              :
      -against-               :
                              :
GEORGE B. CERESIA, *in his official*  :
*and individual capacities, et al.*,  :
                              :
            Defendants.       :
                              :
------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/22/11

WILLIAM H. PAULEY III, District Judge:

Plaintiff George Byrne ("Byrne") brings this action against Defendants the Honorable George B. Ceresia ("Judge Ceresia"), the Honorable Jan Plumadore ("Judge Plumadore"), and the New York State Office of Court Administration ("OCA"). Byrne alleges that Defendants violated his due process rights when they terminated his employment as a Court Officer-Captain ("Captain") without providing adequate pre-termination procedures. Byrne also alleges that Defendants unlawfully discriminated against him on the basis of his disability in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law § 290 et seq. All parties move for summary judgment. For the following reasons, Byrne's motion is denied and Defendants' motion for summary judgment dismissing the action is granted in its entirety.

BACKGROUND

I.  Byrne's Employment as Court Officer-Captain

Beginning in 2003, Byrne served as a Captain in the Third Judicial District of the New York State Unified Court System. (Parties' Stipulated Local Rule 56.1 Statement of

Undisputed Facts dated Mar. 30, 2011 ("Joint Stmt.) ¶ 5.) After working in Albany for eighteen months, Byrne was reassigned to Kingston, New York, where he was appointed district training officer. (Joint Stmt. ¶ 10.) Working out of the Ulster County Courthouse, Byrne was responsible for ensuring that security officers received training in a timely manner. (Joint Stmt. ¶ 11.)

Byrne was also, on occasion, responsible for providing on-site security at the Sullivan County Courthouse and the Surrogate Court in Kingston. (Joint Stmt. ¶¶ 12-13.) While providing security at the Sullivan County Courthouse, Byrne suffered the injuries that resulted in the loss of his job and, ultimately, the commencement of this litigation. (Joint Stmt. ¶ 14.)

II. Byrne's Injury

On August 4, 2005, Byrne was injured while escorting an unruly inmate down a flight of stairs at the Sullivan County Courthouse. (Joint Stmt. ¶ 14.) Between December 2005 and May 2006, four doctors examined Byrne and opined on his ability to continue working as a Captain. (Joint Stmt. ¶¶ 15-18.) In December 2005, Dr. Martin Manin of the New York State Insurance Fund examined Byrne and concluded that he was fit to resume full duty with no restrictions. (Joint Stmt. ¶ 15.) Byrne disagreed with Dr. Manin's assessment, however, and submitted a report from his personal physician, Dr. Vincent Gulfo, that reached a different conclusion. (Joint Stmt. ¶ 16.) According to Dr. Gulfo's report, dated December 27, 2005, Byrne suffered from herniated discs in his cervical spine at three levels. (Joint Stmt. ¶ 16.) As such, Dr. Gulfo opined that Byrne was totally disabled and could not return to his duties at that time. (Joint Stmt. ¶ 16.)

In a subsequent medical report dated May 3, 2006, Dr. David Wellin of the New York State Insurance Fund concluded that Byrne had a "moderate partial disability secondary to

the cervical strain with radiculopathy and multiple level disc herniations" and limited his physical activities: no lifting or carrying of objects greater than twenty pounds, no attempting to restrain inmates, and no sitting or standing for prolonged periods of time. (Joint Stmt. ¶ 17.) Finally, on May 4, 2006, Dr. Jerome Moga issued yet another medical assessment. (Joint Stmt. ¶ 18.) According to Dr. Moga, Byrne could not "return at this time to the full duties of his regular occupation," but "light duty work activity would be possible at this time, with restrictions for any lifting over 30 pounds and for any activity that would involve confrontation with an inmate." (Joint Stmt. ¶ 18.)

### III. Byrne's Termination

After receiving these medical reports, Byrne did not request, and Defendants did not offer, a light duty assignment. (Joint Stmt. ¶ 19.) Nor did the parties engage in any communication regarding a possible reasonable accommodation that might allow Byrne to return to work. (Joint Stmt. ¶ 19). Rather, Byrne simply did not report to work after sustaining his injury in August 2005. (Joint Stmt. ¶ 20.) On August 4, 2006, Judge Ceresia, the Administrative Judge for the Third Judicial District, sent Byrne a letter informing him that OCA had terminated his employment effective immediately. (Joint Stmt. ¶¶ 21-22; Affirmation of Counsel in Support of Plaintiff's Motion for Partial Summary Judgment dated Mar. 30, 2011 ("Sussman Aff.") Ex. 5.) In his letter to Byrne, Judge Ceresia failed to apprise him of (1) the reasons for his termination; (2) his right to contest the decision; (3) the process for contesting the decision; and (4) that, upon contesting the decision, his termination would be held in abeyance pending a final determination. (Joint Stmt. ¶ 22; Sussman Aff. Ex. 5.)

On September 15, 2006, Byrne's counsel demanded the rescission of Byrne's termination and advised Defendants that they had violated Byrne's due process rights. (Joint

Stmt. ¶ 24; Sussman Aff. Ex. 7.) Byrne's attorney did not receive a response. On September 29, 2006, he wrote again to Judge Ceresia explaining in greater detail OCA's alleged violations of Byrne's rights. (Joint Stmt. ¶ 25; Sussman Aff. Ex. 7.)

On October 26, 2006, Judge Ceresia, "in consultation with and by designation of Judge Plumadore," responded to the letters from Plaintiffs' counsel and advised Byrne of the basis of his termination. (Joint Stmt. ¶ 26; Sussman Aff. Ex. 9.) In his letter, Judge Ceresia told Byrne that OCA had terminated him because of his "absences and inability to perform [his] job." (Joint Stmt. ¶ 27; Sussman Aff. Ex. 9.) Although Judge Ceresia's letter informed Byrne of his right to request a hearing to contest the termination decision, the letter did not notify Byrne that OCA would stay his termination pending the outcome of any such hearing. (Joint Stmt. ¶¶ 26, 28; Sussman Aff. Ex. 9.)

IV. Byrne Contests His Termination

On November 1, 2006, Byrne formally contested his termination. (Joint Stmt. ¶ 29; Sussman Aff. 10.) A post-termination hearing was held on February 22, 2007 in Albany, New York. (Joint Stmt. ¶ 31.) After receiving testimony and post-hearing memoranda of law from the parties, the Hearing Officer issued a Report and Recommendation on June 22, 2007. (Joint Stmt. ¶¶ 31-32.)

In the Report and Recommendation, the Hearing Officer found that the Chief Judge's Rules, codified at 22 N.Y.C.R.R. § 25.27, governed Byrne's termination. (Joint Stmt. ¶ 32; Joint Stmt. Ex. C.) The Hearing Officer then concluded that (1) Byrne was absent from his position for a consecutive period of over one year prior to his termination, (2) Byrne was unable, as of May and June 2006, to resume the duties of a court officer and provide security in a courtroom or discharge a firearm, and (3) Byrne could handle light-duty

or supervisory responsibilities. (Joint Stmt. ¶ 33; Joint Stmt. Ex. C.) The Hearing Officer also determined that both parties should have, but did not, engage in an interactive process to determine whether a reasonable accommodation could have facilitated Byrne's return to work. (Joint Stmt. ¶ 34; Joint Stmt. Ex. C.) Finally, the Hearing Officer recommended that OCA withdraw the notices of termination sent to Byrne on August 4 and October 26, 2006 and initiate communication with him to determine his health status and the availability of a reasonable accommodation. (Joint Stmt. ¶ 35; Joint Stmt. Ex. C.)

## V. OCA Confirms Byrne's Termination

After receiving the Report and Recommendation, Judge Plumadore confirmed Byrne's termination in a directive dated September 10, 2007. (Joint Stmt. ¶ 36; Sussman Aff. Ex. 15.) In the directive, Judge Plumadore explained that "due to his physical condition, Captain Byrne cannot reasonably be expected to resume performing the necessary functions of the position of court officer-captain, and there is no light duty or other accommodation that would allow him to return to work without creating an undue hardship on the Unified Court System." (Sussman Aff. Ex. 15.) For these reasons, Judge Plumadore confirmed that "Captain Byrne's termination from his position, effective as of October 26, 2006, remains in effect."[1] (Sussman Aff. Ex. 15.)

By letter dated September 13, 2007, the Unified Court System's Chief of Staff David L. Sullivan informed Byrne that he had the right to appeal Judge Plumadore's decision by filing a written application with then-Chief Administrative Judge Ann Pfau. On October

---

[1] It is unclear why Judge Plumadore confirmed that Plaintiff's termination was effective as of October 26 rather than August 4, 2006, when Plaintiff received his termination notice from Judge Ceresia. Plaintiff alleges that he received no compensation for the period from August 4 through October 26, (Sussman Aff. Ex. 17), and Defendants do not suggest otherwise.

7, 2007, Byrne appealed to Judge Pfau. (Pl. Stmt. ¶ 13-14; Pl. Stmt. Exs. 16-17.) On February 26, 2008, Judge Pfau informed Plaintiff's counsel that she concurred with Judge Plumadore's decision to terminate Byrne as an incapacitated employee. (Sussman Aff. Ex. 18.)

## DISCUSSION

I. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party." 233 East 69th Street Owners Corp. v. LaHood, ---F.Supp.2d----, 2011 WL 2436889, at *4 (S.D.N.Y. Jun.6, 2011) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). "Nonetheless, the party opposing summary judgment may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence in support of its factual assertions." Stiles v. HarperCollins Publishers LLC, ---F.Supp.2d----, 2011 WL 3426673, at *4 (S.D.N.Y. Aug.05, 2011) (quoting D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.1998) (internal quotation marks omitted)). "All reasonable inferences must be construed in the nonmoving party's favor, and if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" Binder & Binder PC v. Barnhart, 481 F.3d 141, 148 (2d Cir.2007) (quoting R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir.1997) (alteration in original)).

II. Due Process

In determining whether a state actor has violated the due process clause, this Court "must determine (1) whether [Byrne] possessed a liberty or property interest and, if so, (2) what process he was due before he could be deprived of that interest." Ciambrello v. Cnty. of Nassau, 292 F.3d 307, 313 (2d Cir. 2002). Byrne argues that he had a constitutionally protected property interest in his permanent Civil Service position, and that Defendants violated the due process clause of the Fourteenth Amendment by depriving him of that position without pre-termination notice or a hearing. Defendants counter that Byrne did not have a protectable property interest in his employment. Defendants also argue that the availability of a post-termination hearing under Article 78 of the New York Civil Practice Law and Rules ("CPLR") provided Byrne with due process.

As a preliminary matter, Defendants argue that Byrne lacked a property interest in continued employment because, under the Rules of the Chief Judge of the State of New York, his post-injury absence from work for over one year constituted grounds for termination. See 22 N.Y.C.R.R. § 25.27(b). But this circular logic is unpersuasive. In fact, the limitation on Byrne's termination outlined in CSL § 75 and N.Y.C.R.R. § 25.27(b) is what created his property interest to begin with. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 ("The hallmark of property is an individual entitlement grounded in state law which cannot be removed except 'for cause.'"). Because New York law provided only limited grounds for Byrne's termination, he possessed a constitutionally protected property interest in his continued employment. See Dwyer v. Regan, 777 F.2d 825, 829 (2d Cir. 1985) (holding that employment in a Civil Service position protected under § 75 was a property interest protected by the due process clause).

Having determined that Byrne possessed a protectable property interest, this Court turns to whether Defendants deprived him of that interest without due process of law. See Ciambrello, 292 F.3d at 313. According to Byrne, the due process clause required Defendants to provide him with a pre-termination hearing, which they did not. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 ("[A] tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."). In response, Defendants argue that the availability of a post-termination proceeding under Article 78 of the CPLR provided Byrne with all of the process to which he was constitutionally due.

Significantly, "Plaintiff does not allege that the state procedures in place, if strictly complied with, would be insufficient due process under the Fourteenth Amendment." Terio v. Johann, No. 05 Civ. 5918 (RPP), 2006 WL 2819659, at *7 (S.D.N.Y. Sept. 29, 2006). Rather, Byrne argues that the manner in which Defendants misapplied state law deprived him of his employment without due process. In evaluating due process claims, "[t]he Supreme Court has clearly distinguished between a claim that an established state procedure does not afford procedural due process and a claim that a property right was lost because of a random and unauthorized act by a state actor." Marino v. Ameruso, 837 F.2d 45, 47 (2d Cir. 1988). In the latter circumstance, "[w]hen the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy." Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006).

Because Byrne "makes no claim that the due process violation was caused by an established state procedure," but rather "argues that state officials acted in flagrant violation"

of required procedures, he essentially contends that "the alleged deprivation of a protected property . . . interest without due process of law occurred because of a random and arbitrary act." Hellenic Am. Neighborhood Action Comm. v. City of New York ("HANAC"), 101 F.3d 877, 880 (2d Cir. 1996). As such, "an Article 78 proceeding is a perfectly adequate postdeprivation remedy in the present situation." HANAC, 101 F.3d at 881. An "amalgam of the common law writs of certiorari to review, mandamus, and prohibition," Article 78 "provides both a hearing and a means of redress for petitioners." HANAC, 101 F.3d at 881. Because Byrne could have initiated an Article 78 proceeding to seek redress for Defendants' random and unauthorized deprivation of his interest in continued employment, his due process claim fails.

       This Court recognizes that "[t]he distinction between random and unauthorized conduct and established state procedures . . . is not clear-cut." Rivera-Powell, 470 F.3d at 465. In particular, "the acts of high-ranking officials who are 'ultimate decision-maker[s]' and have 'final authority over significant matters,' even if those acts are contrary to law, should not be considered 'random and unauthorized' conduct for purposes of procedural due process analysis." Rivera-Powell, 470 F.3d at 465 (quoting Velez v. Levy, 401 F.3d 75, 91-92 & nn. 14 &15) (2d Cir. 2005) (alteration in original); see also DiBlasio v. Novello, 344 F.3d 292 (2d Cir. 2003). Here, Byrne has not demonstrated that Judges Ceresia and Plumadore were "ultimate decision-makers" such that their conduct may not be considered "random and unauthorized." Rather, Byrne acknowledges that then-Chief Administrative Judge Ann Pfau, and not Judges Ceresia and Plumadore, possessed and exercised the "final authority" to approve his termination. (Plaintiff's Supplemental Local Rule 56.1 Statement in Support of Plaintiff's Motion for Partial Summary Judgment, dated Mar. 30, 2011 ("Pl.

Stmt.") ¶¶ 13-15; Sussman Aff. Exs. 16-18.) Because Judges Ceresia and Plumadore were not "ultimate decision-makers" with "final authority over significant matters," Byrne's access to an Article 78 proceeding satisfied due process. Rivera-Powell, 470 F.3d at 465.

For these reasons, Defendants are entitled to summary judgment dismissing Byrne's due process claim.[2]

III. State Law Disability Discrimination

"It is well settled that New York has not waived its immunity from suit in federal court [for claims under the NYSHRL]." Gonzalez v. N.Y. State Div. of Human Rights, No. 10 Civ. 98 (WHP), 2011 WL 4582428, at *3 (S.D.N.Y. Sept. 29, 2011). Thus, this Court lacks subject matter jurisdiction over Byrne's state law claims against OCA and Judges Ceresia and Plumadore (in their official capacities). See Pennhurst State Sch. and Hosp. v. Halderman, 466 U.S. 89, 106 (1984); see also Gollomp v. Spitzer, 568 F.3d 355, 363 (2d Cir. 2009).

Further, this Court declines to exercise supplemental jurisdiction over Byrne's state law claims against Judges Ceresia and Plumadore in their individual capacities. The decision to exercise jurisdiction is entirely within the court's discretion and is not a litigant's right. See Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y., 464 F.3d 255, 263 (2d Cir.2006). In deciding whether to exercise jurisdiction over supplemental state law claims, district courts balance the values of judicial economy, convenience, fairness, and comity. Klein, 464 F.3d at 262 (citing Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

---

[2] This Court does not address Defendants' contention that Judges Ceresia and Plumadore lacked the requisite personal connection to the alleged due process violation to establish liability. Similarly, this Court expresses no opinion on Defendants' qualified immunity arguments.

Since this Court lacks jurisdiction over Byrne's state law claims against the judges in their official capacities, it would be inefficient for parallel litigation against the judges in their individual capacities to proceed in federal court. And because the parties reside in New York, they can conveniently litigate this case in state court. See Gilmore v. Gilmore, No. 09 Civ. 6230 (WHP), 2011 WL 3874880, at *7 (S.D.N.Y. Sept. 1, 2011). Accordingly, this Court declines to exercise supplemental jurisdiction over these claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment dismissing the federal claims is granted. Plaintiff's motion for summary judgment is denied. Because this Court lacks jurisdiction over Plaintiff's state law claims against OCA and Judges Ceresia and Plumadore in their official capacities, these claims are dismissed without prejudice. This Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Judges Ceresia and Plumadore in their individual capacities, which are also dismissed without prejudice. The Clerk of the Court is directed to terminate all pending motions and mark this case as closed.

Dated: November 22, 2011
      New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Michael H. Sussman, Esq.
Sussman & Watkins
Post Office Box 1005
55 East Main Street
Goshen, NY 10924
*Counsel for Plaintiff*

Anthony J. Tomari, Esq.
New York State Office of the Attorney General
120 Broadway
New York, NY 10271
*Counsel for Defendants*